IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-48-D

PAMELA BATSON,                          )
                                        )
        Plaintiff/Claimant,             )
                                        )
                                        )        **MEMORANDUM AND**
        v.                              )        **RECOMMENDATION**
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

This matter is before the court on the parties' cross motions for judgment on the pleadings

[DE-12, -14] pursuant to Fed. R. Civ. P. 12(c). Claimant Pamela Batson ("Claimant") filed this

action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her

application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully

reviewed the administrative record and the motions and memoranda submitted by the parties, it is

recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's

Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner

for further proceedings consistent with this Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 24,

2008, alleging disability beginning February 15, 2008. (R. 11, 113-17). The claim was denied

initially and upon reconsideration. (R. 11, 53-54). A hearing before Administrative Law Judge

("ALJ") Karen A. Cornick was held on August 17, 2010, at which Claimant was represented by

counsel and a vocational expert ("VE") appeared and testified. (R. 11, 24-52). On September 3,

2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-23). On December 20, 2011, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a case in this court seeking review of the Commissioner's final decision, and on May 29, 2013, the court granted Claimant's motion for judgment on the pleadings and remanded the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) because the ALJ failed to sufficiently explain her reasons for giving the opinion of Claimant's treating physician little weight. (R. 465-76).

On July 1, 2013, the Appeals Council issued an order vacating the final decision of the Commissioner and remanding the case to an ALJ for further proceedings consistent with the order of the court. (R. 477-81). On November 13, 2013, ALJ Richard L. Vogel held a hearing, at which Claimant was represented by counsel and a VE appeared and testified. (R. 403, 417-42). On January 2, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 400-16). Claimant did not file written exceptions to the ALJ's decision denying benefits, and the Appeals Council did not initiate review of the decision on its own motion. Def.'s Mem. [DE-15] at 2. Claimant then filed this case seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*,

2

368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

3

the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant contends the ALJ erred (1) in determining Claimant had the residual functional capacity ("RFC") to do medium work without consideration of the prior ALJ's determination that Claimant had the capacity to do only light work, and (2) in failing to properly analyze the opinions of Claimant's treating physician. Pl.'s Mem. [DE-13] at 10-15.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment from her alleged onset date through her date last insured. (R. 405). Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, arthritis, and status post hand surgeries. (R. 406). The ALJ also found Claimant had the nonsevere impairment of anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 406-07). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in her activities of daily living, social functioning, and concentration, persistence and

4

pace, with no episodes of decompensation of extended duration. (R. 406).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with only occasional fingering and frequent handling. (R. 407-10). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 409). At step four, the ALJ concluded Claimant was capable of performing her past relevant work as a dining room attendant, order picker, and hospital cleaner. (R. 410).

**B.    Claimant's Testimony at the Administrative Hearing**

At the time of the November 13, 2013 administrative hearing, Claimant was 56 years old and married with no children at home. (R. 419-20). Claimant has a ninth-grade education. (R. 420). She was unemployed and the family received income and insurance from her husband's job as a truck driver. *Id.* Claimant last worked as a housekeeper in a hospital for six years. (R. 421-22). Her duties included mopping and scrubbing rooms, which required moving furniture. (R. 422). Claimant quit working in 2008 after her mother died and the associated trauma caused Claimant's pain and swelling due to fibromyalgia to worsen. (R. 421, 435). Prior to working as a cleaner, Claimant worked for three years as a stocker at a pharmaceutical shipping company, where her duties included picking up and labeling boxes and placing them on a conveyor belt. (R. 422). She performed the job standing and lifted as much as 60 to 70 pounds with help. (R. 423). Prior to working as a stocker, Claimant worked part-time in a school cafeteria, where her duties included washing dishes, cleaning, some food preparation, and serving the children. (R. 423).

Claimant explained the medical conditions supporting her disability claim and her inability

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

to work full-time. Claimant has had two surgeries on each hand. (R. 424, 437). While working Claimant experienced pain and swelling in her hands and had difficulty gripping and picking up items. (R. 425). Her hands have gotten worse over time so that she cannot cook or clean at home, and her husband does most of the cleaning and either cooks or brings food home. (R. 425-26). Claimant's cousin also comes over to help her with cleaning. (R. 426). Claimant drives very little because it is difficult for her to grasp and hold the steering wheel, and she sometimes drops items. (R. 426-28). She requires help from her husband buttoning or zipping her clothes. (R. 427). Claimant does not believe she could do her past work as a stocker or cafeteria worker due to the grasping and lifting involved in those jobs. (R. 427-28).

Claimant has fibromyalgia and experiences pain and swelling in her legs. (R. 429-30, 433, 435). She does not walk for exercise, and her legs hurt just walking across the street to the mailbox but she does not use an assistive device such as a cane or crutch. (R. 429). Claimant also experiences pain in her back and neck. (R. 433). She has difficulty sitting at times due to pain and swelling, and after 30 minutes to an hour, she has to lie down and elevate her legs, which helps alleviate the pain and swelling. *Id.* Claimant takes Vicodin for pain three or four times a day and Xanax for anxiety three times a day. (R. 435). She indicated her pain is not controlled enough for her to return to work. (R. 436).

Claimant spends her days at home. (R. 430). She described an ordinary day as painful and spends half the day lying down. (R. 430-31). Claimant reads and watches television, and does not go out to visit or do other things because she would rather be home alone. (R. 431). Normally her husband does the grocery shopping and handles the finances. (R. 431-32).

6

## C. Vocational Expert's Testimony at the Administrative Hearing

Coraetta Harrelson testified as a VE at the administrative hearing. (R. 437-41). The VE classified Claimant's past work as follows: dining room attendant, medium exertion, SVP of 2, and DOT # 311.677-018; order picker, medium exertion, SVP of 2, and DOT # 922.687-058; and hospital cleaner, medium exertion, SVP of 2, and DOT # 323.687-010. (R. 438). The ALJ then asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, limited to medium work with no more than occasional fingering or fine manipulation up to one-third of the day and no more than frequent handling up to two-thirds of the day. *Id.* The VE opined that such a hypothetical individual could perform all of Claimant's past work. *Id.*

Claimant's attorney asked the VE to assume the same hypothetical presented by the ALJ but with the added limitation to simple, routine, and repetitive tasks. (R. 439). The VE indicated all prior work could still be performed. *Id.* Claimant's attorney next asked the VE if a limitation to light work would preclude all past work, and the VE responded affirmatively. *Id.* However, the VE further indicated that such an individual could perform the jobs of paper inserter, light exertion, SVP of 2, and DOT # 920.687-138 and bottle packer, light exertion, SVP of 2, and DOT # 920.685-026. (R. 439-40). Claimant's attorney next asked the VE to consider a limitation to occasional handling, as opposed to frequent, and the VE indicated that all work would be precluded by this limitation. (R. 440). The VE also indicated that no jobs would accommodate an individual's need to lie down or elevate both legs periodically for up to one-third of the workday or the need to be alone for 10 to 15 minutes at a time due to emotional problems causing decompensation. (R. 440-41).

7

## V. DISCUSSION

### A. The ALJ's Failure to Consider the Prior ALJ's RFC Determination

Claimant contends that the ALJ erred in determining Claimant could perform medium exertion work with limitations without considering the prior ALJ's determination that Claimant was limited to light work with limitations. Pl.'s Mem. at 10-13. Specifically, Claimant argues that because she has turned 55 years old since the first ALJ's decision, a light RFC and a history of medium, unskilled work would entitle her to a finding of disabled under the Medical Vocational Guidelines (the "Grids" ) at least as of the date she turned 55 years old, October 9, 2012. *Id.* Claimant asserts that the second ALJ avoided a finding of disability under the Grids by increasing Claimant's RFC from light to medium and that doing so without explaining the discrepancy in the two decisions was error in violation of the fairness principles of *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) and *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987). The Commissioner contends that *Albright* and *Lively* are distinguishable because they involved subsequent claims for benefits and the second ALJ was not bound by the prior ALJ's vacated decision. Def.'s Mem. [DE-15] at 17-20. The court agrees with the Commissioner that the ALJ was not bound by or required to consider the prior vacated RFC determination.

In *Albright*, the claimant sought a period of disability, DIB, and SSI payments after sustaining neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* The second ALJ determined, based on the Fourth Circuit case of *Lively* and its

8

purported codification in Social Security Acquiescence Ruling ("AR") 94-2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Id.* at 474-75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal to the district court, the magistrate judge determined that the Social Security Administration ("SSA") in AR 94-2(4) had interpreted *Lively* too broadly and the district court agreed, remanding Albright's claims for reconsideration. *Id.* The court of appeals affirmed the district court, holding that the SSA impermissibly merged the claimant's two claims into one in contravention of the agency's " traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain that "[i]n practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case on which AR 94-2(4) was premised. *Id.* at 477.

In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Id.* at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits; however, the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive" and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted). Thus, the *Albright* court rejected AR 94-

9

2(4) as a restatement of *Lively* and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 478. The SSA subsequently issued AR 00-1(4), 65 FR 1936-01 (Jan. 12, 2000), which rescinded AR 94-2(4) and interpreted *Albright* to hold as follows:

[W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

AR 00-1(4).

Here, *Albright* and AR 00-1(4) did not require the second ALJ to consider the first ALJ's decision because that decision had been vacated, and thus no finding remained to be considered in the subsequent determination. *See Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *2 (E.D.N.C. Dec. 30, 2014) (unpublished) ("Contrary to plaintiff's argument, however, the ALJ was not required to give weight to the findings made in the 2010 decision, because it was vacated and not the final agency decision of the Commissioner.") (citing *Albright*, 174 F.3d at 478; AR 00-1(4)); *Williams v. Colvin*, No. 7:12-CV-242, 2013 WL 5151797, at *4 (W.D. Va. Sept. 13, 2013) (unpublished) ("[B]oth of the prior ALJ decisions in this case were vacated, and thus there was no 'prior finding' to be afforded any weight under SSAR 00-1(4)."). *But see Bordwell v. Colvin*, No. 1:11-CV-01096-TWB-LPA, Order [DE-19] (M.D.N.C. July 24, 2014) (unpublished) (rejecting argument that the rule of *Albright* and *Lively* does not apply to prior decisions vacated by the Appeals Council). Accordingly, where the prior ALJ's decision had been vacated by the Appeals Council, the ALJ did not err in failing to consider the prior RFC determination.

Notwithstanding the immateriality of a prior vacated decision, a claimant is not without remedy should the SSA vacate an ALJ's previous order simply to engage in the "'bait-and-switch'

10

approach" rejected in *Lively*. *Albright*, 174 F.3d at 478. Paramount to the court's decisions in *Albright* and *Lively* was the basic tenet that substantial evidence must support the Commissioner's determination. *Id.* at 477. Thus, the court's substantial evidence review is sufficient to avoid a result that may be "reasonably perceived as unjust and fundamentally unfair." *Id.* at 477-78. In that vein, the court turns to Claimant's final contention that the ALJ erred in evaluating the medical opinion evidence.

**B.     Medical Opinion Evidence**

Claimant contends that the ALJ failed to properly weigh the opinions of Claimant's treating physician Dr. Ayman Gebrail in contravention of the court's remand order. Pl.'s Mem. [DE-13] at 13-15. Specifically, Claimant argues that the ALJ did not address the treatment notes cited by the magistrate judge in the decision adopted by the district court remanding the case, failed to consider the factors set forth in the regulations for weighing a treating physician's opinion, and erroneously rejected Dr. Gebrail's opinion as inconsistent with the opinion of Dr. Gemelli, a consultative examiner. *Id.* The Commissioner contends that the ALJ adequately assessed Dr. Gebrail's opinions and that substantial evidence supports the ALJ's decision to afford them little weight because they are unsupported by the Dr. Gebrail's own treatment notes. Def.'s Mem. at 23-29. The court agrees with Claimant that the ALJ erred in assessing Dr. Gebrail's opinions.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as

11

consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-

12

104-D, 2013 WL 5350870, at \*2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at \*5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations omitted).

At issue here are the February 10, 2010 and October 14, 2013 opinions of Dr. Gebrail, Claimant's treating physician. (R. 383, 585-88). On February 10, 2010, Dr. Gebrail filled out a document titled Social Security Statement of Employability in which he opined that Claimant could not perform light work, as defined by the Social Security Act, because she "was diagnosed with fibromyalgia and during the flare up, her activity usually is limited." (R. 383). On October 14, 2013, Dr. Gebrail filled out an RFC medical source statement indicating that Claimant was diagnosed with fibromyalgia and generalized anxiety disorder, that her prognosis was fair, and that she experienced symptoms of chronic pain over her whole body, fatigue, nervousness, and anxiety. (R. 585). He further described her pain as occurring in her elbow, hands, ankles, neck and back and stated that mild to moderate activities exacerbate her symptoms. *Id.* He listed side effects of her medications as drowsiness, sleepiness, and fatigue. *Id.* Dr. Gebrail indicated that Claimant can occasionally lift or carry 10 pounds and rarely lift or carry 15 pounds and she would need to lie down and/or recline due to pain for 30–45 minutes at one time, two to three times a day for up to about three hours total, can sit for about six hours, and can stand or walk for about three hours in an eight-hour work day. (R. 585-87). He also indicated Claimant would not need to elevate her legs due to prolonged sitting

13

and would not need an assistive device. (R. 587). Dr. Gebrail noted Claimant had limitations on the use of her hands and would be limited to 40% grasping, 70% fine manipulation, and 60% overhead reaching in an eight-hour workday. *Id.* Finally, Dr. Gebrail opined that Claimant would miss more than five days of work per month due to her impairments and that due to her anxiety and chronic pain she would need frequent time off, which would interfere with her ability to keep a job. (R. 588). Dr. Gebrail indicated that his opinions were based on Claimant's history and medical file, as well as progress and office notes. *Id.*

The ALJ addressed both of Dr. Gebrail's opinions, giving them little weight. (R. 409). The ALJ explained,

> In February 2010 Dr. Gebrail submitted a statement indicating that the claimant was unable to participate in the competitive job market due to fibromyalgia because her activities were limited during flare-ups (Exhibit 19F). Little weight is given to this opinion because it is inconsistent with the doctor's treatment notes indicating that the claimant's condition is stable and reasonably controlled with medication. The statement is also vague, as it does not describe how frequently her activities would be limited or the degree to which they would be limited. Finally, the statement is inconsistent with other medical evidence of record, including the findings of the state agency medical consultants and the consultative physician.

> Dr. Gebrail submitted a more recent statement, dated October 14, 2013, indicating that the claimant is able to lift ten pounds occasionally and five pounds frequently, stand and walk for about three hours and sit for about six hours during an eight hour workday. She would need to lie down and/or recline for about three hours during a workday and would be expected to be unable to complete an eight hour workday five days or more during an average month (Exhibit 14E). This opinion is also given little weight. As noted above, the doctor's treatment notes indicate that the claimant's condition is stable and controlled with medication. She reports no significant side effects from medication, and she was recently able to clean her pool.

*Id.* The ALJ also weighed other medical opinions, giving significant weight to the opinion of Dr. Gemilli, a consultative examiner who evaluated Claimant on June 14, 2008, and some weight to the opinion of the state agency consultant who opined Claimant could perform a range of medium work.

14

(R. 410). Finally, the ALJ acknowledged the opinion of another state agency consultant who determined Claimant could perform a range of light work, but found the RFC for a range of medium work was more consistent with the findings of the consultative physician and the record as a whole. *Id.*

## 1. Dr. Gebrail's February 2010 Opinion

Claimant argues that the ALJ failed to address the treatment notes cited by the magistrate judge in the memorandum and recommendation adopted by the district court. Pl.'s Mem. at 13-15. The magistrate judge, in recommending remand, determined that the first ALJ's analysis regarding Dr. Gebrail's February 10, 2010 opinion (R. 383) was insufficient. *Batson v. Colvin*, No. 7:12-CV-37-D, 2013 WL 2352520, at \*4 (E.D.N.C. May 29, 2013) (unpublished). The first ALJ, who determined Claimant had the RFC for light work with limitations, found that Dr. Gebrail's opinion was not supported by the medical evidence of record or clinical progress notes. *Id.*; (R. 18). In considering the ALJ's determination, the magistrate judge noted, among other things, that Dr. Gebrail's opinion was "supported by other evidence in the record" and cited the medical records of three doctors evidencing Claimant's continued pain, positive tender points, and painful range of motion due to fibromyalgia. *Id.* (citing R. 263, 286, 288, 361, 376-80, 385). On remand, the second ALJ provided three reasons for discounting Dr. Gebrail's February 10, 2010 opinion: inconsistency with Dr. Gebrail's own treatment notes, vagueness, and inconsistency with other medical evidence.

### i. Inconsistency with Dr. Gebrail's Treatment Notes

The ALJ found Dr. Gebrail's opinion to be inconsistent with his own treatment notes reflecting that Claimant's condition was stable and reasonably controlled with medication. (R. 409). In this regard, the ALJ did not address the treatment notes that the magistrate judge cited as

15

supportive of Dr. Gebrail's opinion. (R. 408-09). The ALJ need not address every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted). Though not necessarily required, the prudent course would have been to specifically address the evidence cited by the magistrate judge in support of his recommendation that the case be remanded. Further, those treatment notes were arguably more relevant to the February 10, 2010 opinion, because they preceded the opinion and presumably formed the basis for Dr. Gebrail's opinion. Instead, the ALJ cited Dr. Gebrail's later treatment notes from 2011 and 2012, stating Claimant was "stable" and "doing fine" and that her pain was "under reasonable control," which did not reflect Claimant's condition at the time Dr. Gebrail issued his February 10, 2010 opinion. (R. 408-09); *see Brooks v. Colvin*, No. 7:13-CV-161-D, 2014 WL 3535113, at \*6 (E.D.N.C. June 23, 2014) (unpublished) (finding "of concern" the ALJ's reliance on the disparity between plaintiff's description of her condition in 2009 and her doctor's characterization of her condition as stable in 2012, more than two and a half years later), *adopted by* 2014 WL 3534089 (E.D.N.C. July 16, 2014).

Moreover, a review of the 2011 and 2012 treatment notes reveals that they are not inconsistent with Dr. Gebrail's February 10, 2010 opinion. The ALJ chiefly relies on statements that Claimant's fibromyalgia was "stable" and her pain was "reasonably controlled with medication." (R. 409). However, a condition can be "stable" and pain "controlled" but the individual may remain functionally limited, as is the case here. *See Ward v. Colvin*, No. 2:14-CV-3-BO, 2015 WL 502078, at \*2 (E.D.N.C. Feb. 4, 2015) (unpublished) (rejecting argument that the treating physician's notation that plaintiff's condition was "stable" was in direct conflict with his limitations as presented in the residual functional capacity report and finding that the notation that plaintiff's condition is "stable" is "reasonably interpreted as meaning that the condition is not changing, not that the condition is

16

improving as was suggested by the ALJ."); *Brooks*, 2014 WL 3535113, at \*6 ("[T]he fact that plaintiff told Dr. Richman, in January 2012, that her headaches were 'generally stable' is not the equivalent of a finding of improvement, as the ALJ's finding suggests.") (internal and external citations omitted); *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) ("One can be stable and yet disabled.").

For example, on August 10, 2011, Dr. Gebrail noted that Claimant's pain had been reasonably under control with no significant side effects from her medication and that she could do *some* of her activities of daily living at home. (R. 634). On November 21, 2012, Dr. Gebrail noted Claimant's fibromyalgia "occurs constantly and is stable" and that her current pain medication had been helping, but that her pain is "aggravated by movement, sitting, and walking." (R. 613). The fact that Claimant's fibromyalgia was for the most part stable and her pain reasonably controlled with limited activity is not inconsistent with Dr. Gebrail's opinion that Claimant was unable to sustain the level of activity required to perform light work due to her fibromyalgia flares. *See* R. 601 (May 29, 2012 - Claimant's fibromyalgia "occurs constantly and is fluctuating," noting pain at that time in her shoulder relieved by medication but with associated symptoms of spasms and tingling in the arms); R. 610 (Sept. 13, 2012 - Claimant experiencing occasionally more pain related to fibromyalgia); *see also O'Neal v. Comm'r of Soc. Sec.*, No. 1:10CV531, 2011 WL 4383724, at \*16 (S.D. Ohio Aug. 24, 2011) (unpublished) (finding that physician's assessment of plaintiff's fibromyalgia as "stable" was "not inconsistent with his finding that her functional capacity is nonetheless limited and does not mean that plaintiff did not experience the fatigue, decreased stamina, chronic pain, and other symptoms noted throughout the record which contributed to her limited functional capacity."), *adopted by* 2011 WL 4383521 (S.D. Ohio Sept. 20, 2011).

17

The Commissioner also takes issue with the magistrate judge's finding that Dr. Gebrail's opinion was "supported by other evidence in the record," *Batson*, 2013 WL 2352520, at *4, arguing that "several of the treatment notes referenced by Magistrate Judge Webb merely document Plaintiff's subjective complaints, without any objective evidence of disabling symptoms." Def.'s Mem. at 28. However, the court has recognized that "objective tests are of little relevance in determining [fibromyalgia's] existence or severity." *See McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *9 (E.D.N.C. Aug. 23, 2012) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (stating "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective"); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (explaining fibromyalgia patients generally "manifest normal muscle strength and neurological reactions and have a full range of motion")). Accordingly, the treatment notes cited by the magistrate judge were highly probative in evaluating Dr. Gebrail's opinion.

Furthermore, the Commissioner had the opportunity to object to the magistrate judge's findings and recommendation on this ground in the first case but failed to do so, *Batson*, 2013 WL 2352520, at *1, and the second ALJ's decision and new evidence of record fail to diminish the magistrate judge's conclusion. Social Security Ruling 12-2p provides,

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

2012 WL 3104869, at *5 (July 25, 2012). The longitudinal record in this case, including the treatment notes cited by the magistrate judge, indicates that due to Claimant's fibromyalgia she is

18

limited in her daily activities, she has taken a variety of fibromyalgia medications and narcotics (most recently Savella and Vicodin) for several years to treat her symptoms including chronic pain and fatigue, and she regularly receives treatment from her physician related to her fibromyalgia symptoms. *See, e.g.*, R. 286, 376-80, 425-36, 613, 634; *Chavis v. Colvin*, No. 7:12-CV-358-D, 2014 WL 651984, at *5 (E.D.N.C. Feb. 19, 2014) (adopting memorandum and recommendation, in which the magistrate judge concluded, "it is imperative that the ALJ have access to and consider longitudinal information when determining whether a claimant's fibromyalgia is disabling."). Therefore, the Commissioner's argument that the treatment notes cited by the magistrate judge did not support Dr. Gebrail's opinion and thus did not need to be addressed lacks merit, and these treatment notes, along with Dr. Gebrail's later treatment notes, are not inconsistent with his opinion.

### ii. Vagueness

The ALJ found Dr. Gebrail's February 10, 2010 opinion to be vague because it "does not describe how frequently [Claimant's] activities would be limited or the degree to which they would be limited." (R. 409). Dr. Gebrail's opinion was prefaced by the following:

> In order to be considered employable under Social Security's category of light work, the Social Security Act requires than an individual have the ability to lift at least twenty pounds at a time with an ability to frequently lift or carry objects that weigh up to ten pounds (frequently is defined as more than 60% of a normal workday). An individual must be able to walk or stand a good deal of the time, or be able to sit with pushing and pulling of arm or leg controls.

> Employability also requires that work be performed on a regular, continuous, and sustained basis; i.e., lifting, carrying, standing, sitting for 6 out of 8 hours a day, 5 days a week (or an equivalent work schedule), over extended periods of time without unscheduled breaks and interruptions.

> Can your patient perform the activities described above in the competitive job market on a regular, continuous, sustained, and reliable basis?

19

*Id.* Dr. Gebrail responded in the negative and explained that Claimant's limitations from fibromyalgia flares were such that she could not perform light work on a regular basis. (R. 383). While this statement could have been more detailed, the record contains several treatment notes from Dr. Gebrail predating his opinion, which provide evidence as to the frequency and severity of Claimant's fibromyalgia flares and related symptoms of pain and fatigue. *See, e.g.*, R. 253 (Dec. 27, 2007- reported fatigue, tiredness, and pain secondary to fibromyalgia and held out of work until Jan. 2); R. 254 (Dec. 20, 2007 - fibromyalgia flare-up and held out of work for two days); R. 255 (Dec. 6, 2007 - fibromyalgia flare-up with fatigue and worsening muscle aches); R. 258 (Sept. 26, 2007 - history of chronic pain due to fibromyalgia for which Claimant takes Vicodin and uses Fentanyl patch, prescribed Lyrica and held out of work for one week); R. 283 (Mar. 19, 2008 - continued fibromyalgia pain, worse in the morning); R. 286 (Apr. 2, 2008 - diffuse myalgia, especially in arms, back and thighs, increased Vicodin and Lyrica); R. 328 (July 8, 2008 - fibromyalgia flare-up with worsening muscle aches). Thus, Dr. Gebrail's explanation, when read in context of the entire statement and in conjunction with his treatment notes, is not fatally vague.

### iii. Inconsistency with Other Medical Evidence

The ALJ found Dr. Gebrail's February 10, 2010 opinion to be "inconsistent with other medical evidence of record, including the findings of the state agency medical consultants and the consultative physician." (R. 409). First, it is unclear to what "other medical evidence" aside from the two examples listed, the ALJ refers. As already noted, the magistrate judge found that Dr. Gebrail's opinion was "supported by other evidence in the record" and cited in support, among other things, the treatment notes of Dr. Mark Harris and Dr. Richard Moore, *Baston*, 2013 WL 2352520, at *4 (citing R. 377-80, 385). The ALJ did not expressly identify any other evidence, and it is not

20

evident from the ALJ's abbreviated summary (R. 408-09) of the medical records, which span several years, what other evidence he found inconsistent with Dr. Gebrail's opinion.

With respect to the opinions of the state agency medical consultants, Dr. Robert Gardner and Dr. Perry Caviness (R. 304-11, 348-55), the ALJ discounted their opinions, giving only some weight to Dr. Gardner's opinion[2] and implicitly no weight to Dr. Caviness' opinion. (R. 410). Dr. Caviness' opinion, issued on reconsideration, that Claimant could perform light exertion work with occasional climbing and balancing, frequent but not constant fingering, and avoiding concentrated exposure to hazards, is arguably more supportive of Dr. Gebrail's opinion regarding Claimant's limitations than the RFC determined by the ALJ. Likewise, with respect to the June 14, 2008 opinion of Dr. Gemelli, it is significant that he is a one-time examiner and that his opinion was issued more that five years prior to the ALJ's decision. Furthermore, Dr. Gemelli placed no restrictions whatsoever on Claimant's functional abilities. (R. 303). He stated that Claimant had "tenderness to palpation throughout the body in *areas inconsistent with fibromyalgia,*" *id.* (emphasis added), which calls into question whether Dr. Gemelli in fact even considered Claimant's well-documented fibromyalgia and related symptoms and limitations in his assessment. Finally, neither Dr. Gemelli nor the non-examining consultants had the benefit of the Dr. Gebrail's opinions or later records documenting Claimant's several years of treatment for her fibromyalgia-related symptoms. *See* S.S.R. 12-2p, 2012 WL 3104869, at *5 ("Because the symptoms and signs of [fibromyalgia] may

---

[2] In assessing Dr. Gardner's opinion that Claimant was limited to medium exertion work with occasional climbing and avoiding concentrated exposure to unprotected hazards (R. 311), the ALJ reasoned that there was no evidence to support the additional limitations because Claimant has full range of motion and full strength in her lower extremities (R. 410). However, Dr. Gardner expressly stated these limitations were necessary "due to dizziness secondary to hypotention" (R. 311) rather than lower extremity weakness or limited range of motion. Therefore the ALJ's reason for rejecting the additional limitations is not supported by the record and raises further doubt as to the soundness of the ALJ's analysis of the medical opinion evidence.

21

vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE has access to longitudinal information about the person. However, we may rely on the CE report even if the person who conducts the CE did not have access to longitudinal evidence if we determine that the CE is the most probative evidence in the case record."). It is also significant that Dr. Caviness, whose opinion was the latest in time of the three and who had access to the most medical records—including records indicating that Claimant "[f]eels much better with med changes" and "[f]ibromyalgia pain has subsided as well as anxiety"—imposed the most restrictive RFC of all the consultants. (R. 355). Thus, under the circumstances presented here, the state agency consultants' opinions do not serve as persuasive evidence justifying the ALJ's decision to afford Dr. Gebrail's opinion little weight.

## 2.    Dr. Gebrail's October 14, 2013 Opinion

The ALJ also evaluated Dr. Gebrail's October 14, 2013 opinion, giving it little weight. (R. 409). Although this opinion was issued several months after Claimant's date last insured, the ALJ did not discount it on that basis. Rather, the ALJ gave the opinion little weight because Dr. Gebrail's treatment notes indicated Claimant's condition was stable and controlled with medication, Claimant reported no side effects such as drowsiness, sleepiness, and fatigue from her medications, and Claimant was recently able to clean her pool. (R. 409).

First, as addressed above, the fact that Claimant's fibromyalgia was stable with reasonably controlled pain is not inconsistent with Dr. Gebrail's opinion that Claimant could not sustain the level of activity required to perform light work because of her fibromyalgia-related symptoms. *Compare* R. 596 (Feb. 1, 2012 - fibromyalgia pain under reasonable control, no reported side effects from medications), *with* R. 599 (Mar. 26, 2012 - Claimant experienced a fibromyalgia flare up after

22

having a bad virus); R. 601 (May 29, 2012 - Claimant's fibromyalgia "occurs constantly and is fluctuating," noting pain at that time in her shoulder relieved by medication, and associated symptoms of spasms and tingling in the arms); R. 607 (July 27, 2012 - Claimant experiencing joint tenderness due to fibromyalgia and Vicodin has been helping); R. 610 (Sept. 13, 2012 - Claimant experiencing occasionally more pain related to fibromyalgia); R. 613 (Nov. 21, 2012 - fibromyalgia pain is aggravated by movement, sitting and walking, and pain medication is helping).

Next, the fact that Claimant skimmed her pool is not inconsistent with Dr. Gebrail's assessment of her functional abilities and does not mean she can perform medium exertion work on a regular and continuous basis. *See Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act . . . .") (citing *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964)). For example, on one occasion Dr. Gebrail encouraged Claimant to increase her activity level to help with her pain. (R. 611). This recommendation is not inconsistent with Dr. Gebrail's opinion, which reflects Claimant maintains some level of functional ability. (R. 585-88). Dr. Gebrail never opined that Claimant was unable to engage in any activity. The Commissioner also points out in her brief that Claimant "admitted that her functioning was 'not difficult at all.'" Def.'s Mem. at 27 (citing R. 613). However, this statement was specifically related to Claimant's anxiety and thus is reasonably interpreted as a statement about her emotional, not physical functioning. (R. 613). Likewise, the Commissioner asserts Claimant can do some driving, cooking and cleaning. Def.'s Mem. at 27 (citing R. 36, 138, 300, 408). Again, this does not contradict Dr. Gebrail's opinion of Claimant's level of functioning. Furthermore, while Claimant testified that a "good day" would be one where she would "cook dinner [and] try to straighten up a

23

little bit," she further testified that she might have two good days a week and they are not normal (R. 36), and her sister indicated that while Claimant goes out on "good days, when she feels well" and does some shopping, Claimant's husband normally shops for groceries (R. 138). *See* S.S.R. 12-2p, 2012 WL 3104869, at \*6 ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"); *see, e.g.*, R. 646 (June 28, 2010 - regarding fibromyalgia pain, claimant "complains of shoulder and arm pain on and off. She takes her medication regularly.").

Finally, while the ALJ is correct that Claimant generally reported no side effects from her medications, this does not substantially undercut Dr. Gebrail's opinion regarding Claimant's functional abilities. Accordingly, the reasons given for discounting Dr. Gebrail's October 14, 2013 opinion, which is consistent with his earlier opinion and treatment notes, do not support the ALJ's decision to give his opinion little weight.

The undersigned is cognizant of the deferential standard of review applied to the ALJ's evaluation of medical opinions: "[A]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at \*2 (4th Cir. 1999) (unpublished) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992) and citing 20 C.F.R. § 404.1527(d)). However, the reasons provided here by the ALJ for affording little weight to Dr. Gebrail's opinions are not well-supported by the record. Furthermore, while the ALJ is not required to explicitly address the 20 C.F.R. § 404.1527 factors, consideration thereof undermines the weight afforded Dr. Gebrail's opinions where he was an examining and treating physician, he treated

24

Claimant for several years, and his opinions were supported by the longitudinal record, including treatment notes from other examining physicians, as well as his own treatment notes. Accordingly, the ALJ's assignment of little weight to the opinions of Claimant's treating physician Dr. Gebrail is not in accordance with the law regarding the evaluation of medical opinions and is not supported by substantial evidence, and it is recommended that this case be remanded for reconsideration with due weight afforded to Dr. Gebrail's opinions.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-12] be ALLOWED, Defendant's Motion for Judgment [DE-14] on the Pleadings be DENIED, and the case be remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections and seven (7) days to respond to any objection. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 17th day of February 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

25